UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LUIS RAFAEL BORGES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-24-CV-1233-HJB |
| | § | |
| BEXAR COUNTY, TEXAS, and | § | |
| SHERIFF JAVIER SALAZAR, | § | |
| Individually, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants' Amended 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Original Complaint. (Docket Entry 27.)  This matter is before the Court on the parties' consent, pursuant to 28 U.S.C. § 636(c).  (*See* Docket Entry 26.)  For the reasons set out below, Defendants' motion (Docket Entry 27) will be **GRANTED IN PART** and **DENIED IN PART**.

**I.      Jurisdiction.**

Plaintiff asserts claims for violations of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  The Court has original jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

**II.      Background.[1]**

Sometime in early 2024, Plaintiff happened upon a Facebook advertisement for a career fair in San Antonio, Texas.  (Docket Entry 23, at 4.)  The advertisement  announced that the Bexar County Sheriff's Office ("BCSO") was  looking to hire detention officers, law enforcement

_____

[1] The Court presumes the veracity of any well-pleaded facts in Plaintiff's First Amended Original Complaint. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

officers, and dispatchers.  (*Id.*)  Plaintiff applied for a position as a detention officer on May 18, 2024.  (*Id.* at 5.)  During a May 21, 2024, appointment at BCSO's operations center, Plaintiff completed a reference check, criminal background check, and a polygraph examination.  (*Id.*)

Soon thereafter, Plaintiff received an offer of employment from BCSO, conditioned on a home inspection, among other things.  (Docket Entry 23, at 6, 26.)  On June 3, 2024, Plaintiff received a text message from BCSO Deputy Heather Gonzalez, congratulating him on joining BCSO and recommending that he give two-weeks' notice to his current employer because his start date with BCSO was scheduled for June 17, 2024.  (*Id.* at 5.)  At the home inspection the next day, BCSO employees discovered a religious altar dedicated to *Santa Muerta*.[2]  (*Id.* at 7.)  The altar did not belong to Plaintiff—who is Roman Catholic—but to his wife.  (*Id.* at 7–8.)

On June 15, 2024, two days before his scheduled start date, Plaintiff received a telephone call and was told that he had been disqualified from employment with BCSO.  (Docket Entry 23, at 8.)  Shortly thereafter, Plaintiff sent a text message to his recruiter, Deputy Zoie Kelly, to verify whether he had been disqualified.  (*Id.* at 8, 25.)  She confirmed that his application "was disapproved . . . by the [S]heriff for the Santa Muerte."[3]  (*Id.* at 9.)  She then apologized to Plaintiff,

---

[2] *Santa Muerte*, or "Saint Death," is "a Mexican folk deity . . . [whose] origins can be traced to the ancient Aztec goddess Mictecacihuatl." Tyler Biscontini, *Santa Muerte*, EBSCO 2021, permanently available at https://perma.cc/HE2L-T8G8.

[3] In an interrogatory response attached to Plaintiff's live complaint, Sheriff Salazar explained that he first became familiar with *Santa Muerte* as "a symbol associated with Drug Trafficking Cartels," but observed that over time it became "recognized by some who are not part of these organizations." (Docket Entry 23, at 27.) He also opined that "an applicant's mere association with . . . . a person who believes in *La Santa Muerte* . . . . would not make them unsuitable, absent other factors." (*Id.*)

explaining that there was nothing she could do because Sheriff Salazar "has the final decision and it can't be turned."[4] (*Id.*)

Plaintiff filed suit on October 25, 2024, asserting claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights. (Docket Entry 1, at 9–14.) Construing Plaintiff's claims as "disguise[d]" claims for employment discrimination under Title VII, Defendants moved to dismiss the complaint for failure to exhaust administrative remedies or state a claim. (Docket Entry 10, at 3.) Plaintiff amended his complaint on April 25, 2025 (Docket Entry 23), and Defendants again moved to dismiss on the same grounds (Docket Entry 27). Plaintiff has responded to the motion (Docket Entry 29) and Defendants have replied (Docket Entry 31).

## III.   Legal Standard.

The Court may dismiss a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).[5] "Rule 12(b)(6) motions are viewed with disfavor and rarely granted." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citation modified). To survive dismissal, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when

---

[4] In another interrogatory response, Sheriff Salazar confirmed that he has "[f]inal hiring and discharge decision authority" for BCSO. (Docket Entry 23, at 25.)

[5] In their motion, Defendants seek dismissal not only under Rule 12(b)(6) but also in part under Federal Rule of Civil Procedure 12(b)(1), which "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Defendants contend that "[e]xhaustion of administrative remedies . . . is a jurisdictional prerequisite to a Title VII claim." (Docket Entry 27, at 4.) Defendants are incorrect: assuming Title VII is applicable, its exhaustion requirement "is not jurisdictional." *Hancock v. Securitas Sec. Servs. USA, Inc.*, No. SA-20-CV-785-ESC, 2021 WL 2864884, at *3 (W.D. Tex. July 7, 2021) (citing *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 551 (2019) and *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016)). As such, the Court construes Defendants' motion as seeking dismissal exclusively under Rule 12(b)(6) for failure to state a claim.

the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a 12(b)(6) motion, "the Court assumes the truth of well-pleaded factual allegations and reasonable inferences therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (citation modified). The Court's inquiry is generally "limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). However, the Court may also consider documents attached to the motion when they "are referenced in the complaint and are central to the plaintiff's claims." *Id.*

## IV.    Discussion.

Although Plaintiff expressly cites 42 U.S.C. § 1983 as the statutory authority for his claims, Defendants argue that Plaintiff's complaint must be construed as raising claims under Title VII, 42 U.S.C. §§ 2000e-5, *et seq.*, because that statute provides the exclusive remedy for the employment-related claims he makes. (Docket Entry 27, at 7.) And so construed, Defendants argue that the claims must be dismissed for failure to exhaust administrative remedies. (*Id.*) Alternatively, Defendants argue that even if a § 1983 cause of action is available, Plaintiff has failed to state a plausible § 1983 claim.

### A. *Whether Title VII Provides the Exclusive Remedy in this Case.*

Defendants argue that Title VII is the exclusive vehicle available to Plaintiff for asserting religious discrimination claims in the employment context. (Docket Entry 27, at 7.) Defendants therefore construe Plaintiff's § 1983 claims as disguised Title VII claims, and argue that those Title

VII claims must be dismissed because Plaintiff failed to exhaust his administrative remedies—a prerequisite to suit under Title VII.  (*Id.*)[6]

Defendants' argument rests on *Jackson v. City of Atlanta, Tex.*, where a panel of the Fifth Circuit held that "Congress intended for Title VII . . . to be the exclusive means by which an employee may pursue a discrimination claim."  73 F.3d 60, 63 (5th Cir. 1996).  However, seven years before *Jackson* was decided, another panel ruled to the contrary, holding that when "unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1576 (5th Cir. 1989).  While the *Jackson* panel recognized *Johnston*'s holding that "a plaintiff may pursue both [§] 1983 and Title VII claims when the employer's conduct violates both Title VII and a separate constitutional or statutory right," it concluded that a plaintiff "us[ing] *the same facts* to pursue claims under both Title VII and [§] 1983 . . . [is] precluded from suing under both statutes." *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 549 (5th Cir. 1997) (Rosenthal, J., sitting by designation) (discussing *Jackson*, 73 F.3d at 63) (emphasis added).

In *Southhard*, the Fifth Circuit recognized that *Jackson* did not actually distinguish *Johnston*, because the Title VII and § 1983 claims in *Johnston* "were also based on identical facts and identical allegations."  *Southard*, 114 F.3d at 549.  And yet, "because the allegedly discriminatory conduct violated rights under Title VII and rights independent of Title VII," the *Johnston* panel held that "the same facts created claims under both remedies." *Id.*  Thus, the

---

[6] The Court notes that on August 19, 2025, the Equal Employment Opportunity Commission ("EEOC") issued a determination, finding "reasonable cause to believe" that Plaintiff "was denied employment due to his association with his spouse and her sincerely held religious beliefs, in violation of Title VII." (Docket Entry 37-2, at 2.) Plaintiff has advised the Court that he is waiting for the EEOC to issue him a right-to-sue letter—the final step before Plaintiff can be said to have exhausted his administrative remedies—at which time he will seek leave to amend his pleading to add a Title VII claim. (Docket Entry 37, at 4.)

*Southard* panel concluded that "*Jackson* is inconsistent with *Johnston*, and *Johnston*, as the earlier opinion, controls." *Id.* The Fifth Circuit has since reaffirmed this holding. *See Evans v. City of Houston*, 246 F.3d 344, 356 n.9 (5th Cir. 2001).

As *Southard* makes clear, *Johnston* provides the controlling rule in this circuit. Under that rule, Plaintiff's § 1983 claims are cognizable to the extent that he alleges violations of "right[s] independent of Title VII." *Southhard*, 114 F.3d at 549–50; *see Johnston*, 869 F.2d at 1576 ("Title VII . . . remains an exclusive remedy . . . only on rights created by Title VII."). In the amended complaint, Plaintiff alleges that Defendants' refusal to hire him because of his association with his wife violated his rights under the First and Fourteenth Amendments. (Docket Entry 23, at 12–19.) Construed with inferences in Plaintiff's favor, this is a cognizable basis for a § 1983 claim, independent of Title VII. *Cf. Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984) ("[T]he Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse."); *Kipps v. Caillier*, 205 F.3d 203, 205–06 (5th Cir. 2000) ("[Former Coach's] claim that he was fired because of his actual association with his son . . . . because his son chose to play football for [another university] allege[d] the impingement of a cognizable constitutionally protected interest."). Accordingly, Defendants' Title VII-based argument fails.

## B. *Plaintiff's § 1983 Claims.*

Defendants alternatively contend that even if Plaintiff's claims are considered under § 1983, dismissal of the claims against Bexar County is appropriate under the doctrine set out in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). With the exception of two specific claims discussed below, Defendants' contention fails.

"To establish municipal liability (a *Monell* claim) under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal

6

policy." *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (citation modified). There are three ways to establish an official policy under *Monell*: "(1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (3) even a single decision may constitute municipal policy in rare circumstances, when the official or entity possessing final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim." *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023).

With respect to the third category, "[i]f the decision to adopt a particular course of action is properly made by the government's authorized decisionmaker, it surely represents an act of official government policy." *St. Maron Props.*, 78 F.4th at 760. In reviewing the complaint, this element is met "if a plaintiff alleges that a deliberate choice to follow a course of action is made from among various alternatives by officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (citation modified).

Here, Plaintiff has plausibly alleged that Sheriff Salazar himself, personally and unilaterally, made the decision to disqualify Plaintiff from employment with the BCSO based on his marriage to a devotee of a disfavored religion. (Docket Entry 23, at 8–9.) This allegation is supported by statements from Plaintiff's BCSO recruiter, confirming that his application "was disapproved" by Sheriff Salazar himself, and that nothing could be done because he "has the final decision and it can't be turned." (*Id.* at 9.)[7] Thus, the facts alleged in Plaintiff's complaint more than plausibly show that "the official or entity possessing final policymaking authority" regarding the hiring of BCSO employees—*i.e.*, Sheriff Salazar—"performed the specific act that forms the

---

[7] In answering Plaintiff's Interrogatory No. 1, the Sheriff confirmed that he possesses "[f]inal hiring and discharge decision authority" on behalf of BCSO. (Docket Entry 23, at 25.)

basis of the § 1983 claim." *St. Maron Props.*, 78 F.4th at 760.  Accordingly, Plaintiff has plausibly stated a *Monell* claim against the County.[8]

Although the above discussion generally addresses the question of *Monell* liability, two specific *Monell* claims against the County require further discussion: failure to train[9] and failure to discipline.  Plaintiff's allegations are insufficient to support these claims.

"A failure-to-train action is a type of *Monell* claim." *Hutcheson*, 994 F.3d at 482.  To state such a claim, a plaintiff must allege facts from which the Court can reasonably infer "that (1) the [county] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* (citation modified).  "To show deliberate indifference," even at the motion-to-dismiss stage, a plaintiff "must allege a pattern of similar constitutional violations by untrained employees." *Id.* (citation modified).  There is one exception to this requirement—the so-called

---

[8] The Court notes that, although Plaintiff relies upon Sheriff Salazar as the policy maker to allege *Monell* liability against the County, he nevertheless sues the Sheriff in his individual capacity, not his official capacity. In the style of the First Amended Original Complaint, Plaintiff names as defendants "Bexar County, Texas; and Javier Salazar, individually." (Docket Entry 23, at 1.) By specifying that he was suing Sheriff Salazar "individually," Plaintiff appears to disclaim any attempt to sue him in his official capacity. This interpretation is confirmed by the fact that Plaintiff's complaint seeks punitive damages from Sheriff Salazar (*see* Docket Entry 23, at 21), "which are available only in individual capacity suits," *Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010). The complaint also makes "allegations against the [County] that would render any official capacity claims against [Sheriff Salazar] redundant." *Id.* Accordingly, the Court construes Plaintiff's complaint as asserting *Monell* claims against the County and individual claims against Sheriff Salazar for his personal role in unilaterally disqualifying Plaintiff from employment with BCSO on account of his association with his wife, due to her religion.

[9] While Plaintiff purports to assert separate failure-to-train and failure-to-supervise claims, the Fifth Circuit treats these claims as synonymous and subjects them to a single legal standard. *See, e.g., Hutcheson*, 994 F.3d at 482; *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018).

"single-incident exception"—but it is "reserved for those cases in which the government actor was provided no training whatsoever." *Id.* at 483.

Plaintiff has pleaded no factual allegations regarding the lack or quality of training afforded to Sheriff's deputies or any other BCSO employees. That failure alone warrants dismissal. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specifics how a particular training program is defective."). But furthermore, as Defendants correctly argue in their motion, Plaintiff has failed to allege any facts plausibly demonstrating deliberate indifference. (Docket Entry 27, at 16–17.) Indeed, Plaintiff's First Amended Complaint is completely devoid of any factual allegations plausibly showing "a pattern of similar constitutional violations by untrained [BSCO] employees." *See Hutcheson*, 994 F.3d at 483. Accordingly, Plaintiff's failure-to-train claim will be dismissed.

Similar reasoning applies to the failure-to-discipline claim. To state a plausible *Monell* claim for failure to discipline, a plaintiff "must show (1) that the city's failure to discipline amounted to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights." *Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 432 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 772 (2024). "So, to survive dismissal, [P]laintiff[] must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here." *Id.* As Plaintiff's First Amended Complaint fails to cite any prior incidents—let alone one with sufficiently similar facts—his failure-to-discipline claim must be dismissed.

## V.    Conclusion.

Based on the foregoing, Defendants' Amended 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Original Complaint (Docket Entry 27) is **GRANTED IN PART** and

**DENIED IN PART**.  The motion is **GRANTED** as to Plaintiff's failure-to-train and failure-to-discipline claims, and these claims are **DISMISSED**.  In all other respects, the motion is **DENIED**.

SIGNED on August 25, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge